IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLYMANE VESSELS, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 09-5586 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM

PRATTER, J.                                                                SEPTEMBER 8, 2011

      Plaintiffs Charlymane Vessels and Kevin Harrell bring this *Monell* claim against Defendants City of Philadelphia, former Police Commissioner Sylvester Johnson, and Sergeant John Kopecki, alleging that the Defendants engaged in a pattern or practice of failing to train, supervise, and discipline officers, in particular Officer Harry Jones, with regard to the use of force, resulting in the use of excessive force against the Plaintiffs in January of 2006. Defendants filed the instant motion for summary judgment, arguing that Plaintiffs' claims must fail because their November 23, 2009 Complaint was untimely.[1] Plaintiffs argue that their claims must survive because the Defendants concealed vital information regarding Officer Jones's disciplinary history and, as a result, the discovery rule, the doctrine of fraudulent concealment, and/or federal tolling principles tolled the statute of limitations. With the benefit of both briefing and oral argument, the Court will now decide these issues.

---

[1]    Defendants also argue that Plaintiff Kevin Harrell's claim fails as a matter of law because a state court jury determined that no police officer caused him harm. Thus, they argue, his constitutional rights were not violated and the Defendants cannot be liable to him under § 1983. In both their opposition brief and at oral argument, Plaintiffs' counsel agreed that Mr. Harrell's claim fails as a matter of law. Therefore, the Court will grant Defendants' motion as to Mr. Harrell's *Monell* claim, and the facts recited herein will focus on Ms. Vessels's claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 19, 2006, Officer Jones and other Philadelphia police officers arrested Plaintiffs Charlymane Vessels and Kevin Harrell. Compl. ¶¶ 20-34.[2] During the arrest activities, Ms. Vessels suffered physical injuries at the hands of Officer Jones and required emergency medical treatment. Compl. ¶¶ 20-26. Ms. Vessels was charged subsequently with driving under the influence and resisting arrest. Compl. ¶ 25; *Commonwealth v. Vessell*, MC#: 06-012917. Mr. Harrell was charged with aggravated assault and resisting arrest.[3] *See* Compl. ¶ 30.

On February 1, 2006, the Plaintiffs filed a complaint with the Philadelphia Police Department, claiming that Officer Jones and five other police officers used excessive force while arresting them. *See* Def. Ex. 22. Two weeks later, Plaintiffs' counsel also notified the City that the Plaintiffs were considering bringing a claim against the City for injuries sustained during the arrest. *See* Def. Ex. B-32 (letter dated February 15, 2006 from Plaintiffs' counsel to the City of Philadelphia).

**A.      The Subpoena Requests**

In the second half of 2006, the Plaintiffs sent to the City and/or Police Department at least five subpoenas requesting personnel files and Internal Affairs Division ("IAD") reports concerning Officer Harry Jones. These subpoenas and the responses – or lack of responses – form the foundation of Plaintiffs' tolling arguments by which Plaintiffs hope to evade the impact of the applicable time limitations for initiating this suit.

---

[2] Both parties cite to the Complaint for various undisputed facts, and the Court will do the same.

[3] According to the Complaint, ultimately Ms. Vessels entered into the Accelerated Disposition Program for her DUI charges, and the rest of the counts against both her and Mr. Harrell were dropped. *See* Compl. ¶¶ 31, 36.

*1.     First Subpoena*

On April 19, 2006, in the context of Mr. Harrell's criminal case, Plaintiffs' counsel, W. Keith Williams II, wrote a letter to the District Attorney's Office requesting various documents, including "all IAD reports [regarding Officer Jones], Officer Harry Jones' personnel file (to the extent it has records of complaints concerning alleged misconduct or psychological or psychiatric evaluations), and all complaints relating to his conduct as a police officer." *See* Def. Ex. 20 at 3278.  On June 6, 2006, counsel sent a second letter to the District Attorney's Office and a subpoena to Police Commissioner Johnson requesting the same records.  *See id.* at 3278-81.  On June 19, 2006, counsel for the Philadelphia Police Department responded to Mr. Williams, returning his paperwork and instructing him that subpoenas should be served directly to 119 City Hall for processing.  *See id.* at 3282.  There is no record of whether Mr. Williams then attempted to serve the subpoena himself.  Indeed, it seems unlikely that he did because he hired a private process server, MCS, in July to subpoena the records.  *See* Pl. Ex. A, ¶ 2.

*2.     Second Subpoena*

On August 1, 2006, MCS sent a subpoena to the Custodian of Records for the City of Philadelphia requesting "[a]ny and all reports, documents, investigations, files, complaints, letters or other writings" relating to Officer Jones, including "all IAD reports, Officer Harry Jones' personnel file (to the extent it has records of complaints concerning alleged misconduct or psychological or psychiatric evaluations), and all complaints relating to his conduct as a police officer." *See* Pl. Ex. A at ex. A.  The caption for Mr. Harrell's criminal case appeared on the subpoena.[4]  *See id.*  It is unclear what precisely happened to this subpoena.  Jennifer "Jay"

---

[4]     Plaintiffs contend in their statement of facts that the subpoenas related not just to the criminal trial but were also "in preparation for the civil trial."  *See* Pl. Concise Stmt. of Undisputed Facts ¶ 2.  Neither the correspondence accompanying the subpoenas nor the

3

Lamond, an MCS employee, testified at her deposition that she thought the subpoena was approved by the City, *see* Def. Ex. B-18.1, Lamond Dep. at 65:6-66:1, but Plaintiffs admit that as of November 7, 2006, they were aware that the City did not accept this subpoena, *see* Def. Ex. B-34, Pl. Resp. to Def.'s Req. for Admissions ¶ 20.  MCS records, which are less than clear, do seem to indicate that the subpoena was at least delivered to the City.  *See* Def. Ex. B-19 at 3247.[5]

### 2. Third, Fourth, and Fifth Subpoenas

After receiving no response to the August subpoena, on November 7, 2006, Mr. Williams instructed MCS to serve three additional subpoenas: one under Mr. Harrell's case requesting "the entire personnel file of Officer Harry Jones," another under Mr. Harrell's case directed to Lieutenant Leonard Logan requesting the "investigative file concerning IAD control # 06-053 " (the IAD file relating to the incident involving the Plaintiffs),[6] and a third subpoena under Ms. Vessels criminal case requesting a host of information relating to Officer Jones, including IAD files, his personnel file, complaint forms, and other similar documents.  *See* Def. Ex. B-20 at

---

subpoenas themselves, however, give any indication that the subpoenas related to other than the criminal matter.

[5]    In the MCS records, a subpoena with a cover letter dated August 11, 2006 also appears.  *See* Def. Ex. B-19 at 3243-46.  It is unclear from the records or from Ms. Lamond's testimony whether or why this subpoena, requesting Officer Jones's "entire personnel file," was ever served on that date.  *See* Def. Ex. B-18.1, Lamond Dep. at 43:11-45:10; Def. Ex. B-19 at 3247.

[6]    Plaintiffs contend that these instructions were the result of an instruction from the City as to how to get the requested documents.  *See* Def. Ex. 18.1, Lamond Dep. at 66:10-67:8 ("Q: In fact, the City said that you had to do one subpoena that would go to Lieutenant Logan for the investigative file, correct?  A: Yes.  Q: And if you wanted the entire personnel file as indicated in Exhibit A, you would have to simply state the entire personnel file; is that correct?  A. Correct.").  Nothing in the record sets forth the date, context, or full substance of any conversation between MCS or Mr. Williams and the City regarding the proper way to subpoena the information Plaintiffs sought.

3298-3300.  Mr. Williams characterized Ms. Vessels's request as "essentially the same request for Kevin Harrell regarding Officer Jones, but more specific." *Id.* at 3298.

On November 9, 2006, MCS sent a subpoena under Ms. Vessels's criminal case caption requesting the list of documents specified by Mr. Williams's November 7, 2006 letter.  *See* Def. Ex. B-19 at 3235-38.  This subpoena was later cancelled.  *See* Def. Ex. B-19 at 3239-40; Ex. B-18.1, Lamond Dep. at 41:5-42:8.  On November 13, 2006, MCS served Lt. Logan with a subpoena under Mr. Harrell's criminal case caption requesting the IAD file for 06-053.  *See* Def. Ex. B-19 at 3252-58.  The City moved to quash the November 13 subpoena, *see* Def. Ex. B-3 at 3021-37, and that subpoena was later cancelled, *see* Def. Ex. B-19 at 3252-60; B-18.1, Lamond Dep. at 54:14-57:1.[7]

On November 15, 2006, the City received a subpoena from MCS, captioned under Mr. Harrell's criminal action, requesting the "[e]ntire personnel file for Officer Harry Jones Badge # 3087."  *See* Def. Ex. B-21.  The City did respond to this subpoena on November 20, 2006 by producing 41 pages of personnel records for Officer Jones.  *See* Def. Ex. B-18 at ex. D.  It is undisputed that this personnel file produced by the City contained no IAD complaints.  Kathleen Brooke, a manager in the Philadelphia Police Department personnel department, testified at her deposition that an officer's IAD complaints are not included in the personnel file and that the personnel department does not have access to IAD files.  *See* Def. Ex. 35, Brooke Dep. at 41:20-42:5.

---

[7]   The motion to quash and a related motion for production of documents will be discussed in greater detail, *infra*, at Section B.

**B.     Motion Practice**

On September 25, 2006, Plaintiffs' counsel filed a motion for production of Officer Jones's "Internal Police Department Disciplinary File" in Mr. Harrell's criminal case. *See* Pl. Ex. B.  Counsel then filed a motion in Ms. Vessels's criminal case on November 14, 2006 for production of Officer Jones's "Internal Police Department Disciplinary File" and for production of the investigative file relating to IAD Control Number 06-053 (the file relating to the Plaintiffs' encounter with Officer Jones), specifically. *See* Def. Ex. B-1.  On November 27, 2006, seven days after the City responded to the MCS subpoena requesting Officer Jones's "entire personnel file," the Deputy City Solicitor filed a response in opposition to the motion for production in Ms. Vessels's case. *See* Def. Ex. B-3.  The opposition argues against disclosure of the files in connection with the criminal case and contains multiple references to the existence of more than one IAD file for Officer Jones. *See, e.g., id.* at 3012 ("Defendant requests 'IAD files' for Officer Jones, *one of which* is still an open investigation."); 3016 ("Most of the materials requested by Defendant are unrelated to Defendant or the facts of the instant case. *Only one (1) of the reports requested* relates to Defendant's case."); 3017 ("complete disclosure of the *files* violates the public's interest in protecting police officers from such disclosures") (emphasis added).  Also on November 27, 2006, the City filed a motion to quash the subpoena received by Lt. Logan requesting the investigative file for the open investigation of Officer Jones relating to the Plaintiffs' arrest. *See id.*

On November 28, 2006, the Court presiding over the <u>Harrell</u> criminal case held a hearing on the motions. *See* Def. Ex. 16.  During that hearing, the following exchange took place:

6

>THE COURT: Well, you brought the file?
>
>MR. SIMONS [counsel for the City]: Yes, Your Honor, I brought the files, except for one of the files which is still an open investigation.
>
>MR. WILLIAMS: Judge, this is a file that is crucial in this case.
>
>THE COURT: What is the interest?
>
>MR. WILLIAMS: In the ongoing file, Your Honor?
>
>THE COURT: Yes.

*Id.* Mr. Williams proceeded to argue why he needed the contents of the open investigative file.

As Mr. Williams argued that the file may be relevant to credibility, the court sought to clarify Mr. Williams's argument:

>THE COURT: You're talking about just on this?
>
>MR. WILLIAMS: I'm not restricting it to this, Your Honor.
>
>THE COURT: You're not going beyond this. You're talking about – we are limiting it to this incident?
>
>MR. WILLIAMS: Your Honor, my request is for information that deals with complaint [sic] of people in the past, that deals with truthfulness or violence.
>
>THE COURT: I'm not going to do that.
>
>MR. WILLIAMS: If that is your ruling, that is your ruling. But, that is what I'm requesting.
>
>THE COURT: A lot of people can be complained about.
>
>MR. WILLIAMS: Your Honor, the thing is, if, in fact, that information is provided to me or we have an opportunity to take a look at it, that would provide witnesses who I can then bring to the Court to be able to testify about the officers' propensity for violence. The officers, to tell the truth, all of that information is information I would have to prepare for the trial.
>
>THE COURT: Well, I'm not . . . I cannot understand you being interested in witnesses, but I'm not going to go beyond any information as to that.

7

*Id.* at 3144-46.  Ultimately, the Court inspected the open file *in camera* and ordered production of some of the witness statements contained therein.  *See* Def. Ex. B-5.  The presiding judge did not order the City to produce any of Officer Jones's other IAD files, or any portions thereof.  *See* Def. Ex. B-3; Ex. B-5; *see also* Def. Ex. B-19 at 3252-60; B-18.1, Lamond Dep. at 54:14-57:1 (showing that the subpoena requesting the open investigative file was cancelled).

C.    **Completion of IAD Investigation 06-053**

On December 11, 2007, over a year after the motion practice regarding the production of IAD files as described above, Police Commissioner Ross sent Plaintiffs a letter stating that their IAD complaint alleging that Officer Jones had physically abused Ms. Vessels was sustained, but that their complaint that other officers had abused Mr. Harrell was not sustained.  *See* Def. Ex. 33.  The letter also invited the Plaintiffs to personally review the case.  *See id.*  On January 25, 2008, Mr. Williams sent a letter to Lieutenant Thomas Fournier of the Philadelphia Police IAD requesting a review of the files related to IAD investigation 06-053 and noting that he had attempted three times to call and make an appointment to review the records.  *See* Def. Ex. B-20 at 3355.  Plaintiffs allege that on January 28, 2008, the City hand-delivered the full IAD files relating to Officer Jones.  *See* Pl. Concise Stmt. of Undisputed Facts, ¶ 15.[8]

On December 12, 2007, a day after Commissioner Ross sent his letter to Plaintiffs and over a month before Plaintiffs contend they first saw the IAD files, Plaintiffs filed a civil action in state court against various Philadelphia police officers, alleging that Officer Jones and five

---

[8]    Plaintiffs claim that this production was pursuant to their subpoena and motion for production.  As support for this contention, Plaintiffs cite to "Certification of Counsel, ¶."  It is unclear whether they intended to include a "Certification of Counsel" but neglected to do so or merely to indicate that their counsel certifies that the statements contained in that paragraph of their statement of undisputed facts is accurate.  There does not appear to be any other evidence in the record regarding why the City suddenly produced all of the IAD files.

other police officers used excessive force in arresting them. *See* Def. Exs. 23, 23.1, 23.2, 23.3. On two occasions, the Plaintiffs amended their complaint in that matter–once to add two additional defendants and once to withdraw certain claims. *See* Def. Exs. 23.2, 23.3. However, in that case, Plaintiffs did not name the City of Philadelphia, former Police Commissioner Sylvester Johnson, nor Sergeant John Kopecki as defendants. *See* Def. Ex. 23.2. After a two-week trial in October 2009, the state court jury returned a verdict in favor of Ms. Vessels against Officer Jones only, awarding her $350,000 in compensatory damages and $200,000 in punitive damages. The jury found against Mr. Harrell as to all of his claims. *See* Def. Ex. B-24.

On November 23, 2009, in the month following their civil trial in state court, Plaintiffs filed this § 1983 complaint against the City of Philadelphia, former Police Commissioner Sylvester Johnson, and Sergeant John Kopecki, claiming that Defendants engaged in a pattern or practice of failing to train, supervise, and discipline officers, in particular Officer Harry Jones, with regard to the use of force and that this pattern or practice resulted in the use of excessive force against the Plaintiffs in January of 2006.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

Claims brought under 42 U.S.C. § 1983 are "governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). The parties agree that the applicable Pennsylvania statute of limitations is two years. *See* 42 Pa.. C.S.A. § 5524. Thus, absent the application of some tolling doctrine, Ms. Vessels's claim, filed in this court on November 23, 2009, is untimely if her cause of action accrued before November 23, 2007. Defendants contend that neither the discovery rule

nor the doctrine of fraudulent concealment[9] rescue Ms. Vessels's claim, and, understandably, Ms. Vessels begs to differ. The Court will address these arguments in turn.

### A. The Discovery Rule

The statute of limitations for a cause of action under 42 U.S.C. § 1983 begins to run "when the plaintiff has a complete and present cause of action," that is, "when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotations and citation omitted). The Third Circuit Court of Appeals has held that a federal cause of action accrues "upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver v. Levin, Fishbein, Sedran, & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994).

Although federal law determines the date an action under 42 U.S.C. § 1983 accrues, federal courts look to state law to determine whether the statute of limitations may be tolled. *See Wallace*, 549 U.S. at 394. Pennsylvania tolling doctrines include the so-called discovery rule, which "is designed to 'ameliorate the sometimes-harsh effects of the statute of limitations.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493, 500 (Pa. Super. 1984)). Under the discovery rule, the statute of limitations does not begin to run until "the plaintiff knows, or reasonably should know, (1) that

---

[9] Defendants also argue that Ms. Vessels is not entitled to federal equitable tolling to save her claim. In certain limited circumstances, when state tolling doctrines conflict with federal law or policy, equitable tolling may available be available under federal law – namely, "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in an timely manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000). Because Ms. Vessels makes no argument that situations (2) or (3) apply here and because situation (1) is covered by Pennsylvania's doctrine of fraudulent concealment, the Court need not address this argument.

he has been injured, and (2) that his injury has been caused by another party's conduct." *Id.* (internal quotation omitted).

Defendants cite *Williams v. P.O. Baird*, No. CIV. A. 97-1987, 1997 WL 438495 (E.D. Pa. July 23, 1997), for the proposition that the discovery rule only tolls the running of the statute of limitations until plaintiffs know that they are injured, not until they know every fact underlying their claim. In Baird, the plaintiffs claimed that the defendants fabricated evidence and testified falsely at a preliminary hearing for criminal charges which were later dismissed. *Id.* at *1. To save their claim from the statute of limitations, the plaintiffs argued that they did not know the extent of the defendants' conspiracy until years later, when details of the corruption became public. The court dismissed this argument, noting that the date on which the plaintiffs learned the full details of the conspiracy is irrelevant because they knew that they had been injured before learning the full details and because "the limitation period will begin to run even if plaintiff does not know all of the facts necessary to assert a claim." *Id.* at *1 n.2 (internal quotation omitted).

Ms. Vessels counters that she did all she could to investigate her claim, but that the Defendants intentionally misled her, thus preventing her from discovering the cause of her injuries. Such an argument, however, goes to fraudulent concealment, not to the discovery rule, and will be discussed *infra*, at Section B. She also argues that she did not have a "complete and present cause of action" against the Defendants until January 28, 2008, when Officer Jones's IAD file was handed over to her. At oral argument, counsel for Ms. Vessels referred the Court to *Dique v. New Jersey State Police*, 603 F.3d 181 (3d Cir. 2010), in support of this argument. In *Dique*, the plaintiff brought a selective-enforcement claim, alleging that the defendant law enforcement officers had engaged in racial profiling when they stopped him, ostensibly for a speeding violation. The Third Circuit Court of Appeals decided that it was not until several years

later, when the plaintiff's attorney learned of the state's pervasive racial profiling practices, that the plaintiff knew or should have known by the exercise of reasonable diligence, that he had a claim. *Id.* at 188.

The *Dique* case differs from the one at hand in at least one especially critical way. While in *Dique*, the plaintiff was told he was detained due to a traffic violation and had absolutely no reason to know that he was even injured until he later found out about the state's racial profiling policies, in this case, on the very date of her arrest Ms. Vessels knew that she was physically injured and that someone else caused those injuries. As the *Williams* court held, a plaintiff need not know all of the facts necessary to assert a claim before the statute of limitations begins to run. *See Williams*, 1997 WL 438495, at *1 n.2; *see also Bradley v. Conner*, Civil Action No. 07-1347, 2007 WL 4241846, *4 (W.D. Pa. Nov. 29, 2007) (collecting cases that "expressly reject[] application of the discovery rule where a plaintiff merely lacks knowledge as to the defendant's identity"); *Robinson v. Lowe's Home Center*, Civil Action No. 06-4403, 2007 WL 2739187, *2 (E.D. Pa. Sept. 19, 2007) ("Uncertainty as to the identity of a defendant is not the sort of lack of knowledge which triggers the discovery rule."); *Revell v. Port Auth. of N.Y. & N.J*, Civil Action No. 06-402, 2007 WL 2462627, *4 n.4 (D.N.J. Aug. 27, 2007) (holding that amendment to add an additional defendant who the plaintiff claimed not to have known about until discovery would be futile because the claim against that defendant would be time-barred and noting that "the case law makes clear that the focus of the discovery rule is on recognition of the injury and not those who allegedly caused it").

A more apt comparison can be drawn between this case and *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912 (Pa. Super. 2005). In that case, several plaintiffs who, as children, had been sexually abused by Catholic priests sued the Archdiocese of Philadelphia and the

Archbishop, alleging that the defendants were negligent in supervising the priests who abused them and had failed to warn plaintiffs of danger or to provide a secure environment. *Id.* at 917. Although the abuse occurred as long as 47 years before the plaintiffs filed suit, they claimed that they were entitled to tolling under the discovery rule and the doctrine of fraudulent concealment. In discussing the discovery rule, the court found that plaintiffs "knew they were injured by their abusers at the time of the abuse, that they knew the identity of their abusers, that they knew their abusers were employed by the Catholic Church, and that they knew their abusers were part of the hierarchy of the Catholic Church." *Id.* at 920. The court observed that the plaintiffs were "really claiming that they were unaware, not of their injury, but of a secondary cause of their injury," and held that the facts within their knowledge "were sufficient to put the plaintiffs on notice that there was a possibility that the Archdiocese had been negligent." *Id.* at 920-21. Hence, the Superior Court ruled that the limitations period was applicable to bar the stale claims.

In this case, Ms. Vessels was clearly aware on the date of her arrest that she had been injured. She knew that Officer Jones used force in arresting her, that he had therefore caused her injury, and that he was employed by the Philadelphia Police Department. Thus, Ms. Vessels had enough information to put her on notice that she may have a claim against the Defendants. Indeed, Plaintiffs' counsel sent a letter in February 2006 informing the City that Plaintiffs were considering filing a claim against the City. Like the *Meehan* plaintiffs, Ms. Vessels cannot take advantage of the discovery rule to toll the statute of limitations.

**B.    Fraudulent Concealment**

The question of fraudulent concealment is at the heart of the dispute in this case. Even in arguing for protection under the discovery rule, Ms. Vessels relies on the allegation that the

Defendants concealed critical facts establishing their liability and thereby made it impossible for her to discover her cause of action until the statute of limitations had already expired.

The doctrine of fraudulent concealment tolls the statute of limitations "where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'" *Mest*, 449 F.3d at 516 (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)). The concealment need not be "fraud in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception," but the doctrine still requires proof of an affirmative act on the part of the defendants which has caused the plaintiffs to relax their investigation. *Ciccarelli*, 757 F.2d at 556 (internal quotation omitted). The doctrine does not, however, encompass mere mistake or misunderstanding. *See Ciccarelli*, 757 F.2d at 556.

Here, Ms. Vessels claims that she repeatedly attempted to subpoena Officer Jones's IAD history and that when the Defendants finally responded to the subpoena, they intentionally failed to include any IAD files, thereby leaving Ms. Vessels with the mistaken belief that none existed. Even accepting these contentions as true, and thereby setting aside the fact that Officer Jones's personnel file was produced pursuant to a subpoena that requested his "entire personnel file" and did not specifically include a request for the IAD files and the absence of any evidence that the City told Mr. Williams or MCS that the production of the entire personnel file would include IAD files, Ms. Vessels's fraudulent concealment argument still fails.

Mere days after Ms. Vessels's counsel received the "entire personnel file" that failed to include Officer Jones's IAD history, the City responded to Ms. Vessels's motion for production of Officer Jones's "Internal Police Department Disciplinary File." That response makes it crystal

clear that IAD files relating to Officer Jones did exist.[10] In that response, the City repeatedly refers to multiple IAD files relating to Officer Jones. Moreover, at the November 28, 2006 hearing about the production of the IAD files, Mr. Simons, representing the City, explicitly mentioned bringing "the files" with him, with the exception of the open investigation file, which also revealed that IAD files for Officer Jones existed.[11] Ms. Vessels contends that this statement did not reveal that there were additional IAD files, but simply suggested that the "files" Mr. Simons brought to the hearing were the same ones already produced. However, the hearing related to a motion for production of IAD files only, not to any dispute over the production of

---

[10] The Court also notes that had there truly been no IAD files relating to Officer Jones, mounting a vigorous opposition to their production would have been senseless, and, thus, the fact of opposition to the request alone should have alerted a reasonable person that files did exist.

[11]   THE COURT: Well, you brought the file?
MR. SIMONS [counsel for the City]: Yes, Your Honor, I brought the files, except for one of the files which is still an open investigation.
Def. Ex. 16 at 3132. Indeed, at that hearing, Mr. Williams continued to argue that he was seeking access to Officer Jones's complaint history, and not just information relating to the open investigation into the incident involving Ms. Vessels:
THE COURT: You're talking about just on this?
MR. WILLIAMS: I'm not restricting it to this, Your Honor.
THE COURT: You're not going beyond this. You're talking about – we are limiting it to this incident?
MR. WILLIAMS: Your Honor, my request is for information that deals with complaint [sic] of people in the past, that deals with truthfulness or violence.
THE COURT: I'm not going to do that.
MR. WILLIAMS: If that is your ruling, that is your ruling. But, that is what I'm requesting.
THE COURT: A lot of people can be complained about.
MR. WILLIAMS: Your Honor, the thing is, if, in fact, that information is provided to me or we have an opportunity to take a look at it, that would provide witnesses who I can then bring to the Court to be able to testify about the officers' propensity for violence. The officers, to tell the truth, all of that information is information I would have to prepare for the trial.
THE COURT: Well, I'm not . . . I cannot understand you being interested in witnesses, but I'm not going to go beyond any information as to that.
*Id.* at 3144-46.

16

personnel files generally, so a belief that the files were anything other than IAD files simply defies logic by suggesting counsel did not know why he was in court arguing for production of specific material. Likewise, that the City filed a motion to quash only the subpoena relating to the open investigation is not the significant statement that Ms. Vessels would have it be; the subpoena requesting that file was the only subpoena served on the IAD, and, contrary to Ms. Vessels's insistence, the only subpoena the City actually responded to by producing documents made no mention of IAD files – the subpoenas specifically asking for those files were all cancelled.

Thus, even if the documents produced pursuant to the subpoena misled Ms. Vessels into believing that no IAD files existed for Officer Jones apart from the open investigation relating to her and Mr. Harrell, the statements of the City just days after those documents were produced, both in writing in their opposition to Ms. Vessels's motion and in person at the hearing, directly contradicted that mistaken assumption. "Where common sense would lead the plaintiff to question a misrepresentation, the plaintiff cannot reasonably rely on that misrepresentation." *Mest*, 449 F.3d at 516. Given the undisputed facts of this case, no reasonable person would have been misled by the failure of the City to produce IAD files after the City's opposition to and the hearing on Ms. Vessels's motion seeking production of Officer Jones's IAD history. Thus, Ms. Vessels is not entitled to tolling under the doctrine of fraudulent concealment.[12]

---

[12] The Defendants also specifically addressed the potential argument by Ms. Vessels that Federal Rule of Civil Procedure 11 would have prevented her from bringing a *Monell* claim before the running of the statute of limitations because her counsel had insufficient information to assert such a claim. The Court certainly does not take the tenets of Rule 11 or Plaintiffs' counsels Rule 11 concerns lightly. However, because the Court has already held that Ms. Vessels is not entitled to tolling of the statute of limitations and therefore should, in the exercise of reasonable diligence, have been able to investigate and assert her claim within the statute of limitations, the Court need not address this additional argument.

**CONCLUSION**

Because Ms. Vessels is not entitled to tolling of the statute of limitations, her claim is time-barred. Therefore, the Court will grant the Defendants' Motion for Summary Judgment and dismiss the case with prejudice. An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE